## Economy Furniture Company v. Frank M. Chapman, Charles C. Chapman and Samuel E. Barr.

1. TROVER—*Conversion by Warehouseman.*—Where property consisting of a quantity of goods of a like general description, is stored in a warehouse at the same time and in a single lot, a part of which is described in a replevin writ, and another part of the same lot is not so described, so that an exercise of care and responsibility is required to determine and select the articles described in the writ from the others, a warehouseman is not required to take upon himself the risk of making the selection and delivery upon the writ. His refusal to do so does not constitute a conversion of the property.

2. AGENCY—*Facts Constituting—Question of Law.*—It is a question of law as to what facts constitute an agency, but whether the necessary facts exist, is a question of fact.

3. SAME—*Existence of Facts Constituting—For the Jury.*—Where evidence has been admitted tending to show authority in a person to act for another party, such party may have the jury instructed that unless they believe from the evidence such person had such authority, all evidence of his acts and statements should be disregarded.

**Memorandum.**—Trover.    Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding.    Heard in this court at the October term, 1893, and affirmed.    Opinion filed March 13, 1894.

E. A. SHERBURNE, attorney for appellant.

APPELLEES' BRIEF, W. L. SNELL AND WILLIAM PRENTISS, ATTORNEYS.

As a general proposition, there can be no question that the appellees, being warehousemen, would be entitled to a

lien on goods stored with them for their proper charges. Jones on Liens, Sec. 967; Steinman v. Wilkins, 7 Watts & Serg. (Penn.) 466; Story on Bailments (8th Ed.), Sec. 453; Low v. Martin, 18 Ill. 286; Ill. Cent. R. R. Co. v. Alexander, 20 Ill. 23; Cole v. Tyng, 24 Ill. 99; Hanchett v. First Nat. Bank, 29 Ill. App. 274; 3 Parsons on Contracts (7th Ed.), 267.

It is true that a mortgagor can not subject the mortgaged goods to a lien for their keeping as against the mortgagee without the acquiescence of the mortgagee.

Undoubtedly an implied consent will answer the requirements of the law. Jones on Chattel Mortgages (3d Ed.), Secs. 472, 473 and notes; Hours v. Newcomb (Mass.), 15 N. E. Rep. 123.

Mr. Presiding Justice Shepard delivered the opinion of the Court.

The appellees are warehousemen, and as such received from one Mrs. Sturm a quantity of household furniture for storage in the month of January, 1891.

A part of the goods so stored were covered by a chattel mortgage given by Mrs. Sturm to the appellants, who were furniture dealers, for the unpaid purchase price she had contracted to pay therefor, but that fact was not known to the appellees when they received the goods for storage. At the same time that the mortgaged goods were delivered to the appellees by Mrs. Sturm, other and different goods of a like general description were also delivered by her for storage.

About three days after the appellees received the goods, one Theodore Sonocson called at the appellees' warehouse and had an interview with Mr. Barr, the manager for appellees, of their warehouse, concerning the goods in question.

The assignment of error chiefly relied upon by appellant is the admission of evidence, over its objection, as to what was said and done by Sonocson at the interview referred to.

The action was in trover against the appellees for the conversion by them of the goods.

If the evidence referred to was properly admitted, the jury might properly have found, as they did, that there had been no conversion, and that the appellees were not guilty.

The conversion, if there was any, consisted in the refusal by the appellees to deliver up the goods except upon payment of the storage charges.

Whether they were justified in such refusal depends upon whether there was any arrangement, either express or implied, between appellant and the appellees, whereby, after it became known to appellant that the goods had been stored by the mortgagor with appellees, they should be left on storage with the appellees for the accommodation of the appellant.

It was proved in the case, and it is conceded by appellant, that Sonocson had previously been in the employ of the appellant as a collector, and it was testified to by Barr, on behalf of the appellees, and his testimony on that point is not contradicted, nor was it excepted to, that at the time Sonocson came to the warehouse to inquire about the goods, he exhibited to Barr the chattel mortgage as his authority for making his inquiries.

The witness Barr further testified over the objection of appellant's counsel, to the substantial effect that Sonocson showed the mortgage and notes to witness and asked to see the list of goods as it appeared upon appellee's books, which was then shown him, and that he then said the goods were all there, and told the witness to keep them, and that unless Mrs. Sturm, the mortgagor, should pay her notes as they fell due they would come and get the goods. Barr also testified that Sonocson asked what the storage charges were, and that he showed him on the books what the storage and cartage charges amounted to at that time. He further testified that Sonocson came to the warehouse once or twice afterward, but that he never demanded the goods or said anything about taking them.

About three months later a replevin suit was begun before a justice of the peace, for the goods, and what is claimed to

be a refusal by the appellants to deliver the property in response to a demand made upon the replevin writ then occurred. That suit was dismissed for lack of jurisdiction in the justice of the peace, and this suit in trover was then begun without any further effort to obtain the property.

As to what occurred when the demand on the replevin writ was made, there is a direct conflict in the testimony. Even the witnesses for the appellant do not agree, and if the jury believed the testimony on the part of the appellees and did not credit that in behalf of the appellant, they correctly came to the conclusion that appellees had not refused to deliver up the property, and hence that there was no conversion.

Where, as was shown on behalf of the appellees, property, consisting of a quantity of goods of a like general description, is stored in a warehouse at the same time and in a single lot, a part of which is described in a replevin writ, and another part of the same lot is not so described, so that an exercise of care and responsibility is required to determine and select the articles described in the writ from the others, a warehouseman is not required to take upon himself the risk of making the selection and delivery upon the writ. His refusal to do so does not constitute a conversion to his own use of the property demanded.

Barr, one of appellees' witnesses, testified that he had handled the goods several times; that they were all stored together; that some of them not covered by the mortgage were like those described in it; that the difference was in the finish, some mahogany finish and some antique finish, and that he could not distinguish between one bed bought of the Economy Furniture Company, and another bed that Mrs. Sturm claimed as her own.

The appellee Frank M. Chapman testified that he offered the persons who came with the writ all the goods if they would pick them out; that the goods were mixed with a lot of other household goods belonging to the mortgagor, and that his firm could not select them, and would not take the responsibility of selecting them; that he told the parties

having the writ that his firm would afford them all available facilities to select the goods from the pile, but that the parties were afraid to take the responsibility and declined to select the goods; that appellees insisted upon being paid the storage charges, but told the persons having the writ that if they declined to pay and would not do so, they might take the goods if they could pick them out, but they insisted upon appellees picking them out, and refused to do it themselves.

It is true that appellant's witnesses testified to a different course of conduct and conversation on that occasion, and one which, if credited by the jury, would have led to a necessarily different result, but the jury saw and heard the several witnesses, and had the right to give credence to one or more of them, and to discredit others. We refer particularly to the evidence on the part of appellees only, for the purpose of showing that if the jury relied upon that as being the truth of the case, as they evidently did, their conclusion of not guilty was justifiable.

Of course, if the testimony of Barr concerning the conduct and conversation of Sonocson was properly admitted, then the jury were further justified in arriving at the conclusion that appellees had not been guilty of a conversion of the goods. If Sonocson was the constituted agent of the appellant, to look after furniture which appellant had sold in the course of its business of selling household goods upon the installment plan, and upon which it held chattel mortgages for the unpaid part of the purchase price, there can be no doubt but that such employment would carry with it the authority to him to incur incidental and necessary charges for storage. And having that authority, the proof need not be strong that, finding the mortgaged goods in a warehouse and leaving them there, he did obligate his principal to pay reasonable storage charges, so long as they might remain in the warehouse.

Although it is a question of law as to what facts constitute an agency, yet whether the necessary facts exist upon which an agency may be based, is a question of fact for a jury to determine.

It was proved and is admitted, that Sonocson worked as collector for appellant for three or four years prior to May 1, 1890. Whether he was employed by appellant in January, 1891, at the time he called at the warehouse and inquired about the goods in question, was a question upon which the evidence was conflicting.

Mr. Eiffert, the manager of the appellant corporation, testified in rebuttal upon that question in answer to the counsel for appellant, as follows:

Q. " Mr. Eiffert, was Theodore Sonocson in the employ of the Economy Furniture Company as late as January 1891? A. No, sir.

Q. If he was ever in the employ of the company and left it, when was it? A. He left on the first of May, 1890."

And on cross-examination, in response to the question, " How is it that you remember so sure about this business now, when you were greatly in doubt about it this forenoon; then you did not know whether he was in your employ or not?" he answered, " Because I looked up his pay roll. I did not want to swear to anything that I did not know positively. I went back to the office and looked when he quit."

When first called as a witness in chief for appellant, Mr. Eiffert testified on cross-examination, as follows:

Q. " Did you have a man working for you in your employ at that time by the name of Theodore Sonocson? A. I don't think so. He was one of our collectors.

Q. He was one of the men in your employ? A. Yes, he was collecting for us about three or four years, but I don't think he was working for us at that time.

Q. I will ask you if he was not your collector at that time? A. We had two collectors.

Q. And if you didn't send him to Chapman Bros., before you went there? A. No, sir.

Q. Are you sure about that? A. He probably had it on his route, but not to my knowledge. I went to Chapman Bros. and saw Mr. Barr myself.

Q. You are sure you saw him? A. Yes, sir.

Q. Now, I will ask you if the fact is that you sent this

Theodore Sonocson there and he came back and told you what took place there? A. Probably that was on his route. Mr. Barr didn't say that there was anybody else in there after the goods. Probably he afterwards was there."

The evidence on the part of appellees as to Sonocson's employment by appellant, outside of his own statements, consisted of the uncontradicted fact testified to by Mr. Barr, that Sonocson came to the warehouse two or three times concerning the goods in question, and that on the occasion of his first visit he had in his possession the chattel mortgage to the appellant, and exhibited it as his authority to make inquiries about the goods.

We are not prepared to say that the jury, in considering the uncertainty of the testimony of Mr. Eiffert when first examined, and that his more positive testimony in rebuttal was based wholly upon what appeared on a pay roll that was not produced, were not justified in finding that the fact of Sonocson having the mortgage in his possession, was the better evidence of his employment by appellant at that time.

With such a finding of employment by appellant, Sonocson's statements and directions to Barr about the keeping and storage of the furniture, were competent evidence, and made the appellant liable for the storage charges, and it was no conversion by appellees to demand, if they did so, prepayment of the storage charges as a condition of their delivery up of the furniture.

Evidence having been admitted that tended to show authority in Swanson to act for the appellant, the appellant might, if it had so desired, have had the jury instructed that unless they believed from the evidence he had such authority, all evidence of his acts and statements should be disregarded.

It is further urged that it was error for the court to instruct the jury to find the defendant Barr not guilty.

It appeared in the evidence beyond dispute that Barr was a mere employe of the appellees, refusing to act except as they might direct, and being such it was entirely proper for

the court to instruct that for mere non-feasance he be found not guilty.

Moreover, the record does not sustain the statement in the abstract prepared by the appellant that "to the giving of which last instruction (referring to the one to find Barr not guilty), the plaintiff then and there duly excepted."

The record itself shows, immediately following the close of the evidence, as follows:

" And thereupon the court instructed the jury as follows:"

Then follow three instructions without any statement as to who they were offered by, or in whose behalf they were asked or given, or whether they were given on the court's own motion, and following the third instruction occur the words:

"Excepted to by plaintiff."

The third instruction was the one directing the jury to find Barr not guilty.

If inferences were to be indulged in, we might say from the fact that the first two instructions are favorable to the side of the plaintiff, that they were offered by the plaintiff, and that the third one was not offered by the plaintiff because of the fact that it was unfavorable to that side, in directing the jury to find Barr not guilty. But it is only by inference that it may be so said.

Such an exception is too uncertain both as to what was excepted to and when.

It is quite plain that neither of the three instructions referred to were offered by the defendants, for it appears further on that several instructions were offered by the defendants, all of which were refused to be given.

It does not appear that any instructions asked by the plaintiff were refused, and the unidentified instructions which were given, presented the law of the case in fully as favorable an aspect as the plaintiff was entitled to.

We fail to find in the record any sufficient error to justify a reversal of the judgment of the Circuit Court, and it will therefore be affirmed.